STATE OF MINNESOTA

IN SUPREME COURT

A24-0632

Court of Appeals                                                        McKeig, J.

Petition of Minnesota Housing Finance                    Filed:  March 18, 2026
Agency for an Order Directing Entry of              Office of Appellate Courts
New Certificate of Title After Mortgage
Foreclosure Sale Certificate
No. 112938 – Foster

————————————————

Keith Ellison, Attorney General, Margaret Jacot, Assistant Attorney General, Saint Paul, Minnesota, for respondent Minnesota Housing Finance Agency.

Jack E. Pierce, Matthew D. Goldfine, Bernick Lifson, P.A., Minneapolis, Minnesota, for appellant Creative Real Estate, Inc.

————————————————

S Y L L A B U S

A holder of a sheriff's certificate of sale from a mortgage foreclosure waives the right to contest a junior creditor's redemption when it accepts the redemption money tendered by the junior creditor.  A certificate holder accepts the redemption money by receiving the money and failing to return the money as soon as administratively possible.

Reversed and remanded.

1

O P I N I O N

MCKEIG, Justice.

In this case, the holder of the sheriff's certificate of sale arising from a residential mortgage foreclosure disputed the junior creditor's redemption of the property. The junior creditor, in turn, raised the affirmative defense of waiver. We must decide whether the evidence here supports a legal conclusion that the certificate holder waived its right to challenge the junior creditor's redemption.

We have previously held that a holder of a sheriff's certificate of sale waives its right to contest a junior creditor's redemption by accepting the redemption money tendered by the junior creditor. *Clark v. Butts*, 76 N.W. 199, 202 (Minn. 1898); *Orr v. Sutton*, 148 N.W. 1066, 1069 (Minn. 1914). Here, we hold that a certificate holder accepts the redemption money by receiving the money and failing to return the money as soon as administratively possible. In this case, respondent Minnesota Housing Finance Agency ("MHFA") is the certificate holder and appellant Creative Real Estate, Inc. ("Creative") is the junior creditor. MHFA received the redemption check and did not return the money. Accordingly, we reverse the court of appeals' affirmance that MHFA did not waive its right to challenge Creative's redemption, and we remand to the district court.

**FACTS**

The facts of this case are undisputed. MHFA foreclosed on a mortgage it held on a residential property in Anoka County previously owned by Raymond Foster. MHFA purchased the property at the foreclosure sale and received a sheriff's certificate of sale in

2

August 2021, subject to the statutory six-month owner redemption period.[1]  Creative performed $507.20 worth of improvements to the property in January 2022.  On February 8, 2022, Creative filed a mechanic's lien for that work and a Notice of Intention to Redeem based on the mechanic's lien.  On March 3, 2022, Creative executed a Satisfaction of Mechanic's Lien document stating the lien was "fully paid and satisfied."  The next day, Creative provided the Anoka County Sheriff with $164,595.13 in full redemption of the property, the Claim of Unregistered Interest, the mechanic's lien, and the Notice of Intention to Redeem.  The sheriff executed a Certificate of Redemption in Creative's favor.  On the same day, Creative conveyed the property to E&T Property, LLC via warranty deed.

On March 9, 2022, the sheriff delivered the redemption money to MHFA's counsel via a check payable to MHFA.  On March 17, 2022, the Examiner of Titles rejected Creative's Certificate of Redemption and deed to E&T because the mechanic's lien had been satisfied on March 3, 2022, and, as that was Creative's "only interest" in the property, Creative "did not have redemption rights on March 4, 2022."  On March 24, 2022, Executive Title, the title and escrow company handling Creative's conveyance of the property to E&T, notified MHFA of the satisfaction of Creative's mechanic's lien and that "MHFA is the fee owner of the land."  On April 25, 2022 (47 days after receiving the redemption check and 32 days after the notification from Executive Title), MHFA returned the redemption check to its attorney.  The record does not indicate what happened to the check between March 9 and April 25, 2022, though at some point MHFA's attorney

---

[1]     Once the owner's redemption period expires, each creditor—in the order of priority of their liens—has a period of time to redeem.  Minn. Stat. § 580.24.

forwarded the check to MHFA. On April 28, 2022, MHFA's attorney deposited the redemption money into the attorney's trust account. The record does not indicate that MHFA or MHFA's attorney communicated with Creative regarding the redemption money before or when the attorney deposited the check.

Also on April 28, 2022, MHFA filed a petition asking the district court to find that Creative's attempted redemption was invalid and null and void, to order the Registrar of Titles to cancel the certificate of title memorializing Creative's lien, and to enter a new Certificate of Title in MHFA's name as the sole property owner. At some point between April 28 and August 9, MHFA discussed with E&T whether MHFA should return the redemption money to the sheriff, deposit the funds with the district court, or deposit the funds in MHFA's attorney's trust account while the litigation was pending. On August 9, 2022, MHFA and E&T filed a stipulation agreeing that the redemption money would continue to be deposited in MHFA's attorney's trust account. Creative was not part of that stipulation.

MHFA, Creative, and E&T all moved for summary judgment. Creative and E&T argued that MHFA lacked standing to contest Creative's redemption because MHFA "accepted and deposited [Creative]'s redemption funds." The district court granted MHFA's motion for summary judgment and denied Creative's and E&T's, concluding that MHFA did not waive its right to challenge the redemption because "MHFA did not solicit the redemption check when the sheriff sent the redemption funds to MHFA," MHFA did not "knowingly and intelligently waive[] any irregularities in the redemption," "the

4

mechanics lien Creative used to redeem was not valid and therefore was void," and E&T was not a bona fide purchaser.

Creative and E&T jointly appealed to the court of appeals, which affirmed the district court in all respects. *Petition of Minn. Hous. Fin. Agency*, No. A24-0632, 2025 WL 251879, *3–5 (Minn. App. Jan. 21, 2025). Specifically, the court of appeals held that "MHFA did not actively solicit the redemption funds," "accept[] the redemption money," or "appropriate the funds to itself." *Id.* at *4 (first citing *Clark*, 76 N.W. at 200 (internal quotation marks omitted); then citing *Orr*, 148 N.W. at 1069–70 (internal quotation marks omitted); then citing *Grant v. Bibb*, 152 N.W. 728, 728–29 (Minn. 1915); and then citing *Hanson v. Woolston*, 701 N.W.2d 257, 257, 261, 263–64, 266 (Minn. App. 2005)). Consequently, the court of appeals concluded that "the district court did not err by holding that MHFA did not waive its right to challenge Creative's redemption." *Petition of Minn. Hous. Fin. Agency*, 2025 WL 251879, at *4.

We granted Creative's petition for review on the question of waiver.

## ANALYSIS

There is one issue before the court: when does a holder of a sheriff's certificate of sale from a mortgage foreclosure waive the right to contest a junior creditor's redemption. On appeal from summary judgment, we review the application of law to undisputed facts de novo. *Pietsch v. Minn. Bd. of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn. 2004).

First, we provide an overview of the junior creditor redemption process, including that a certificate holder waives the right to challenge a junior creditor's redemption when

5

the certificate holder accepts the redemption money tendered by the junior creditor. Next, we analyze our case law to determine what constitutes acceptance of the redemption money. Finally, we determine whether MHFA accepted the redemption money, thereby waiving its right to contest Creative's redemption.

A.

Minnesota law permits junior creditors to redeem foreclosed real property sold at a sheriff's sale if the mortgagor fails to redeem the property within six months of the sale. Minn. Stat. § 580.24. To redeem from the holder of a sheriff's certificate of sale, a junior creditor must tender the redemption money—the amount the certificate holder paid for the property at the sheriff's sale plus interest—to the county sheriff. Minn. Stat. §§ 580.23, subd. 1(a), 580.24, 580.25. The sheriff acts as an intermediary for the redemption money; after receiving the funds from the junior creditor, the sheriff delivers the money to the holder of the certificate of sale from the mortgage foreclosure (usually the purchaser at the foreclosure sale).

The redemption process has changed over time. In the late 1800s and early 1900s, the sheriff notified the certificate holder that the sheriff had received the redemption money and the certificate holder physically presented themselves to the sheriff to receive the funds. *See Clark*, 76 N.W. at 200 (noting the certificate holder "went to the sheriff's office, and drew out the redemption money"); *Sardeson v. Menage*, 43 N.W. 66, 66 (Minn. 1889) (noting the certificate holder was "duly notified of the redemption on the day it was made" but "never accepted the redemption money, and the same is still in the sheriff's hands"); *Grant*, 152 N.W. at 728 (noting the certificate holder was "notified of the redemption" and

6

accepted the redemption money eighteen days later). Today, the sheriff typically mails the certificate holder a redemption check, as it did in this case. *See, e.g.*, *Hanson*, 701 N.W.2d at 261.

Certificate holders have the right to contest a junior creditor's redemption. *See* Minn. Stat. § 508.71, subd. 2 (providing standing for "[a] registered owner or other person in interest" to petition the court "upon the ground that (1) registered interests of any description . . . have terminated and ceased"). Waiver is an affirmative defense to an action challenging a redemption. *See, e.g.*, *Clark*, 76 N.W. at 202. A certificate holder waives the right to contest a junior creditor's redemption by accepting the redemption funds tendered by the junior creditor. *Id.* ("By accepting the redemption money [the certificate holder] waived all of the irregularities in the redemption . . . ."); *Orr*, 148 N.W. at 1069 ("[T]he title nevertheless passes to [the junior creditor] if the one from whom redemption is made accepts the redemption money . . . ."). The parties here dispute what actions constitute acceptance in the junior creditor redemption context.

B.

A review of our case law reveals that a certificate holder accepts redemption money, thus waiving the right to contest the junior creditor's redemption, by receiving the redemption money and failing to return it. The central question here is how quickly the redemption money must be returned before the certificate holder is deemed to have accepted it. In *Clark*, the certificate holder learned of the redemption, "went to the sheriff's office, and drew out the redemption money." 76 N.W. at 200. The certificate holder returned the money to the sheriff over a week later. *Id.* at 202. We held that "[b]y accepting

7

the redemption money [the certificate holder] waived all of the irregularities in the redemption . . . and the return of the redemption money to the sheriff, a week or more after it was received from him, did not have the effect of recalling or rescinding that waiver." *Id.* at 202. *Clark* mentions the time elapsed between when the certificate holder received the redemption money and when the certificate holder returned the money to the sheriff—over a week—as part of its holding that returning the redemption money did not rescind the waiver. *Id.* This implies that if the certificate holder had returned the money to the sheriff earlier, this may have rescinded the certificate holder's acceptance and, by extension, waiver of the right to contest the junior creditor's redemption. *Id.* Instead, the certificate holder retained the redemption funds for over a week, solidifying the waiver. *Id.*

We also held that certificate holders waived their right to contest a junior creditor's redemption in *Grant*. 152 N.W. at 729. In *Grant*, the junior creditor redeemed based on a district court judgment, and the certificate holders received the redemption money from the sheriff. *Id.* at 728. Seven months later, after the district court judgment was reversed, the certificate holders attempted to set aside the redemption, alleging "that they were ignorant of the frailty of the . . . judgment." *Id.* We held that the certificate holders were "put upon inquiry by the fact of redemption" and that "[i]gnorance of one put upon inquiry, due to his failure to inquire, is not mistake." *Id.* at 729 (quoting *Todd v. Johnson*, 57 N.W. 320, 322 (Minn. 1893) (internal quotation marks omitted)). Further, we held that the certificate holders "were bound to determine which of two inconsistent courses they would take, whether to recognize the judgment as valid, or disregard it as invalid. They could not do

8

both." *Id.* We concluded that the certificate holders "recognize[d] the judgment as valid" when they "received the redemption money and accepted and appropriated it to themselves. By so doing they conceded [the junior creditor]'s right to redeem and waived any defect in his title to do so." *Id.* We did not define how the purchaser "appropriated" the redemption money beyond having received and retained it.

Creative, citing to *Clark* and *Grant*, argues that a certificate holder accepts the redemption money, thus waiving its right to contest a junior creditor's redemption, when it receives and retains the redemption money. MHFA argues that passively receiving a redemption check in the mail and retaining the check does *not* constitute acceptance of the redemption money. MHFA cites to the court of appeals' holding in *Hanson* that the certificate holder did not "waive[] jurisdictional defects in the judgment" supporting the junior creditor's right to redeem "by accepting an unsolicited redemption check" or by "retain[ing] [the check] for six months." 701 N.W.2d at 263–64. MHFA argues it did not take sufficient "affirmative steps to seek out payment and to appropriate payment for its own use" to constitute acceptance of the payment. It observes that the certificate holder in *Clark* affirmatively sought out payment by going to the sheriff's office and drawing out the redemption money, 76 N.W. at 200, that the certificate holder in *Orr* "relinquished" title to the junior creditor, 148 N.W. at 1069, and that the certificate holders in *Grant* not only received but "appropriated" the redemption money, 152 N.W. at 729.

Creative has the stronger argument. The court of appeals' opinion in *Hanson* has no bearing on what we have previously held. And neither *Clark*, *Orr*, nor *Grant* stand for the proposition that a certificate holder must affirmatively seek out or actively solicit the

9

redemption money in order to accept that money. *See Staub as Tr. of Weeks v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 629 (Minn. 2021) (noting that a "descriptive fact is not analytically relevant" where we did not "directly confront and address" a legal question regarding that fact). It is true that the certificate holder in *Clark* went to the sheriff's office to receive the redemption money in person, an affirmative act in keeping with the typical redemption process of the time. 76 N.W. at 200; *see also Sardeson*, 43 N.W. at 66. However, we did not hold that affirmatively seeking out the redemption money was necessary to establish waiver. It is also true that in *Orr*, the certificate holder "relinquished to [the junior creditors] the title he had." 148 N.W. at 1069. But there are no facts in *Orr* indicating that the acceptance or transfer involved some affirmative act. We held in *Orr* that "*[b]y accepting the redemption money* paid by [the junior creditor] [the certificate holder] relinquished to them the title he had." *Id.* (emphasis added). The certificate holder in *Orr* did not engage in two separate acts by (1) accepting the redemption money and (2) relinquishing the title to the junior creditor. It was one act: the act of accepting the redemption money meant that the certificate holder relinquished the title to the junior creditor. *Id.*

Finally, we held in *Grant* that the certificate holders waived the right to challenge the junior creditor's redemption by "receiv[ing] the redemption money and accept[ing] and appropriat[ing] it to themselves." 152 N.W. at 729. MHFA argues that *Grant* is distinguishable because MHFA did not "appropriate" the redemption money to itself. However, as noted above, we did not explain how the *Grant* certificate holders "appropriated" the redemption money; the only actions the certificate holders took

10

regarding the redemption money was "accept[ing] the money" and "retain[ing] it." *Id.* at 728. In context, we used "appropriat[ion]" in *Grant* as another term for acceptance and retention, or perhaps as the result of accepting and retaining the redemption money. Either way, the certificate holders in *Grant* did not take an action regarding the redemption money beyond accepting and retaining it.

Under our case law, when the certificate holder receives redemption money, it must choose one "of two inconsistent courses" of action: recognize the redemption as valid or reject it as invalid. *Grant*, 152 N.W. at 729. A certificate holder accepts redemption money, thus waiving the right to contest the junior creditor's redemption, by receiving the redemption money and failing to return it. *See Clark*, 76 N.W. at 202 (noting the certificate holder received the redemption money from the sheriff and did not return it for over a week); *Grant*, 152 N.W. at 728 (noting the certificate holder received the redemption money and never returned it). Accordingly, we clarify our existing case law and hold that if a certificate holder receives the redemption money tendered by a junior creditor, the certificate holder must either (1) accept the money, thus recognizing the redemption as valid and waiving the right to contest the junior creditor's redemption; or (2) return the money as soon as administratively possible, thus retaining the right to contest the redemption. The certificate holder can fulfill its duty to inquire into the validity of the redemption, as articulated in *Grant*, 152 N.W. at 729, and *Todd*, 57 N.W. at 322, after returning the money, and contest the redemption should the junior creditor move in court for resolution.

C.

We next consider whether to remand for the district court to determine if MHFA returned the money as soon as administratively possible. We remand a question of fact when there are not "sufficient factual findings . . . to permit effective appellate review." *State ex rel. Swanson v. 3M Co.*, 845 N.W.2d 808, 817 (Minn. 2014). Here, we need not remand for additional fact-finding because "the record is sufficient without additional fact-finding" to determine that MHFA did not return the redemption money as soon as administratively possible: MHFA never returned the redemption money at all. *Buskey v. Am. Legion Post #270*, 910 N.W.2d 9, 18–19 (Minn. 2018).

The undisputed facts show that MHFA accepted Creative's redemption payment because MHFA received the redemption money tendered by Creative and did not return the money. On March 9, 2022, the sheriff delivered the redemption check to MHFA's attorney. At some point between March 9 and April 25, 2022, MHFA's attorney sent the check to MHFA. MHFA therefore received the redemption money. On April 25, 2022, 47 days after receiving the redemption check, MHFA sent the redemption check back to its attorney. MHFA's attorney deposited the check in the attorney's trust account. MHFA did not communicate any rejection of the redemption money to Creative or to the sheriff. Five months after receiving the redemption check, MHFA still had not returned the money to Creative. Instead, MHFA entered into a stipulation with E&T to continue holding the money in the attorney's trust account. Because the record shows that MHFA *never* sent the money back to Creative or to the sheriff, MHFA cannot show that it returned the money

12

as soon as administratively possible, and remand on that factual question is therefore unnecessary in this case.[2]

\*       \*       \*

MHFA received the redemption check tendered by Creative and did not return the money as soon as administratively possible.  MHFA therefore accepted the redemption money and waived its right to contest Creative's redemption.

**CONCLUSION**

For the foregoing reasons, we reverse the court of appeals' decision and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

---

[2]     Remand to the district court is still required, however, given that by reversing the court of appeals, we are in turn reversing the court of appeals' affirmance of the district court's summary judgment order.

13