158 P.3d 899

Tim ROBERTS,
Intervenor/Defendant/Appellant,

v.

Paul ROBERT and Yolanda Robert,
Trustees of the Samani Trust, Dated 3–31–1997, Plaintiffs/Appellees.

No. 1 CA–CV 06–0530.

Court of Appeals of Arizona,
Division 1, Department B.

May 31, 2007.

Baumann Kelly Doyle Paytas & Bernstein, PA By Gary T. Doyle, Phoenix, Attorneys for Intervenor/Defendant/Appellant.

Bruno Brooks & Goldberg, PC By Robert H. Brooks, Kingman, Attorneys for Plaintiffs/Appellees.

## OPINION

NORRIS, Presiding Judge.

¶ 1 The Plantiffs/Appellees, Paul Robert and Yolanda Robert, trustees of the Samani Trust dated March 31, 1997 ("lienholders"), purchased two Arizona real property tax liens. The lienholders subsequently sued the owner of record, Phyllis V. Johnson, the Mohave County Treasurer, various fictitious parties, and the "unknown heirs of any of" them "if they be deceased" to foreclose their right to redeem the tax liens. After attempting personal service on Johnson, the lienholders discovered Johnson had died. A son of Johnson, identified in the record as "person in charge of the defendant's estate," was served on Johnson's behalf and subsequently entered into an arrangement with the lienholders whereby they would obtain a default judgment without any assessment of fees or costs against Johnson or the son. The lienholders then obtained a default judgment barring Johnson or any person claiming title "under" her from asserting any right, title or interest in and to the property subject to the tax liens.

¶ 2 A year later, Appellant, Tim Roberts, appeared, claimed to be a son and heir of Johnson, and argued that as an heir, he had a right to redeem the tax liens. Moving for a new trial and asking the superior court to set aside the default judgment, he argued the default judgment was void insofar as it purported to foreclose his right to redeem. The superior court disagreed, denied his motions, and assessed sanctions.

¶ 3 The fundamental issue presented in this appeal is whether a decedent's heir has a right to redeem a tax lien on the decedent's real property. Because we hold an heir has such a right, we also hold that to foreclose the heir's right to redeem, the tax lien purchaser must make the heir a defendant to a tax lien foreclosure action and obtain a judgment foreclosing the heir's right to redeem.

## FACTS AND PROCEDURAL HISTORY

¶ 4 The facts as revealed in the record are undisputed. Johnson owned two parcels of real property in Mohave County, Arizona. In August 2004, the lienholders sued Johnson, the Mohave County Treasurer, various fictitious parties such as John and Jane Does, and the "unknown heirs of any of" them "if they be deceased" to foreclose their right to redeem two tax liens on the property which the lienholders had purchased from the Treasurer. Under state law, a tax levied on real property constitutes a lien on the assessed property. Arizona Revised Statutes (A.R.S.) § 42–17153(A) (Supp.2006) [1]. To secure payment of delinquent taxes on real property, county treasurers are authorized to sell tax liens, which are interest-bearing investments.

1. We refer to the current version of this and other statutes because, for purposes of the issues addressed in this opinion, they are the same as the statutes in effect at the time of the events giving rise to this appeal.

A.R.S. § 42–18101 (Supp.2006). The purchaser of a tax lien receives a certificate of purchase, also known as a tax lien certificate. A.R.S. § 42–18118 (Supp.2006).

¶ 5 Real property tax liens may be redeemed by the property owner, the owner's agent, assignee, or attorney, or by any person who has a legal or equitable claim in the property, including the holder of a tax lien certificate of a different date. A.R.S. § 42–18151 (Supp.2006). A tax lien is redeemed when a person authorized by A.R.S. § 42–18151 pays the county treasurer the delinquent taxes, accrued interest, and other statutory fees. A.R.S. § 42–18153 (Supp.2006). If a tax lien certificate is not redeemed within three years of the date of purchase, the purchaser may bring an action in the superior court to foreclose the right to redeem. A.R.S. § 42–18201 (Supp.2006). That is what happened here.

¶ 6 The lienholders attempted to serve the fictitious parties and the unknown heirs by publication. Accordingly, their lawyer filed with the court an affidavit supporting service by publication under Arizona Rules of Civil Procedure 4.2(f) and (g). Rule 4.2(f) allows for service by publication on a person if that person's present address is unknown but whose last known address was outside Arizona; Rule 4.2(g) allows for service by publication when, in any action involving title to real property, joinder of the unknown heirs of a deceased person is "necessary for a complete determination of the action."

¶ 7 The lienholders also attempted to personally serve Johnson at her last known, out-of-state, address. But because Johnson had died—the record does not reveal when—the process server retained by ·the lienholders served Johnson's son, John Roberts, identified in the process server's affidavit of service and in the record as "person in charge of defendant's estate." [2] A few days later, John Roberts telephoned the lawyer representing the lienholders, explained that before Johnson's death the two of them had decided the property was not worth anything, had no intention of paying the taxes, and "were going to let them go." The lienholders' lawyer advised John Roberts that as long as the matter "went by default," the lienholders would not attempt to obtain a judgment "for attorney's fees or costs against the defendants, although they would no longer have an interest in the property." After voluntarily dismissing the fictitious parties—but not the unknown heirs—and obtaining defaults against the Treasurer and Johnson, the lienholders obtained a default judgment on December 1, 2004. The judgment quieted title to the property in the lienholders and barred the defendants and "all who do or may claim title under them" from asserting "any right, title, claim or interests whatsoever in and to" the property.[3]

¶ 8 On December 2, 2005, Tim Roberts filed an application for new trial under Arizona Rule of Civil Procedure 59(j); after the lienholders responded, Roberts moved to intervene, and to set aside the judgment as being void under Arizona Rule of Civil Procedure 60(c). Claiming to be a son and heir of Johnson,[4] Roberts asserted that when Johnson died, he obtained an ownership interest in the property by operation of law; this interest gave him the right to redeem the tax liens; and the default judgment was void as to him because he had not been personally served or served by publication. Although the superior court granted Roberts' request to intervene, it denied his other motions. It also granted the lienholders' request for attorneys' fees as sanctions under Arizona Rule of Civil Procedure 11.

¶ 9 Roberts timely appealed. We have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1)(2003).

---

2. The record contains no other details regarding John Roberts' status vis-à-vis Johnson's estate, or, for that matter, whether Johnson died testate or intestate and whether Johnson's estate had been or was being administrated.

3. The judgment stated the unknown heirs as well as the fictitious parties had been dismissed. However, the lienholders' notice of dismissal only dismissed the fictitious parties; it did not dismiss the unknown heirs.

4. In an affidavit, Roberts asserted he was Johnson's son and heir. The lienholders did not provide the superior court with any evidence contradicting Roberts' assertion.

## DISCUSSION

¶ 10 On appeal, Roberts asserts, as he did in the superior court, that as a son and heir of Johnson, he obtained an interest in the property by operation of law that entitled him to redeem the tax liens. We agree.

¶ 11 Section 42–18151 [5] identifies who may redeem a tax lien. It states that a tax lien may be redeemed by

1. The owner.

2. The owner's agent, assignee or attorney.

3. Any person who has a legal or equitable claim in the property, including a certificate of purchase of a different date.

¶ 12 Although, as the lienholders point out, A.R.S. § 42–18151 does not specifically state that an heir may redeem a tax lien, by operation of law an heir succeeds to the ownership interest of the decedent in real property. In Arizona, title to a decedent's real property devolves directly to his or her heirs and devisees, and this is true whether the estate has been or is being administered. Section 14–3101(A) (Supp.2006) states:

> Upon the death of a person, his separate property and his share of community property devolves to the persons to whom the property is devised by his last will, or to those indicated as substitutes for them in cases involving lapse, renunciation or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition to his heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting the devolution of intestate estates.[6]

*Accord,* A.R.S. § 14–3901 (Supp.2006)("In the absence of administration, the heirs and devisees are entitled to the estate in accordance with the terms of a probated will or the laws of intestate succession.").[7]

¶ 13 Arizona courts have consistently recognized this principle. *See, e.g., Stephens v. Comstock–Dexter Mines,* 54 Ariz. 519, 522, 97 P.2d 202, 203 (1939)(real estate of deceased person upon death changes in ownership by operation of law and becomes vested in heirs subject to payment of debts of the estate, expense of administration, and allowance to family); *In re McDonnell's Estate,* 65 Ariz. 248, 252, 179 P.2d 238, 241 (1947)(on death, title to real property immediately vests in heirs who may then convey their interest subject to ordinary processes of administration and rights of creditors); *Hallas v. Evans,* 69 Ariz. 14, 18, 207 P.2d 985, 987 (1949)(on death of husband, widow as only heir became immediately vested with title to husband's land); *In re Foreman's Estate,* 99 Ariz. 147, 149–50, 407 P.2d 102, 103–04, (1965)(real property of deceased person changes in ownership upon his or her death by operation of law and becomes vested in heirs).[8]

¶ 14 Therefore, when Phyllis Johnson died, title to her real property devolved directly to her devisees or heirs by operation of law. Under A.R.S. § 42–18151, Roberts, either as an owner or a person having a legal claim in the property, became entitled to redeem the tax liens.

¶ 15 This, then, brings us to Roberts' second argument on appeal: that because the

---

5. Whether this statute allows an heir to redeem a tax lien presents an issue of law, which we review de novo. *Sun Valley Fin. Servs. of Phoenix, L.L.C. v. Guzman,* 212 Ariz. 495, 499, ¶ 17, 134 P.3d 400, 404 (App.2006).

6. This statute contains several terms of art that are defined in A.R.S. § 14–1201 (Supp.2006). These defined terms include "devise" ("when used as a verb, means to dispose of real or personal property by will") and "heirs" ("persons ... who are entitled under the statutes of intestate succession to the property of a decedent"). A.R.S. § 14–1201(12) and (23).

7. A.R.S. § 14–3101 and § 14–3901 are virtually identical to § 3–101 and § 3–901, respectively, of the Uniform Probate Code. Unif. Probate Code § 3–101, –901 (1998). The comment to § 3–901 confirms that title to a decedent's property passes to his heirs and devisees at death.

8. In *In re Estate of Johnson,* 168 Ariz. 108, 110, 811 P.2d 360, 362 (App.1991), we explained that although A.R.S. § 14–3101 provides that property is transferred to the devisees upon the decedent's death, the statute does not "govern the time of vesting of a devise in an heir who is required by the [decedent's] will to survive distribution of the estate."

lienholders failed to join him as a defendant in their foreclosure action, the foreclosure judgment did not foreclose his right to redeem. Again, we agree with Roberts.

¶ 16 As explained above, if a tax lien certificate is not redeemed within three years of the date of purchase, the purchaser may bring an action in the superior court in the county in which the real property is located to foreclose the right to redeem. A.R.S. § 42–18201(A) (Supp.2006). Thus, if the holder of a tax lien certificate wants to foreclose the redemption right of an owner or a person who has a legal or equitable interest in the property, the holder must join those parties in the foreclosure action. If the certificate holder fails to join such a party but obtains a judgment foreclosing the right to redeem held by other defendants, that judgment will not foreclose the redemption right of the missing party.

¶ 17 Section 42–18204 (Supp.2006) recognizes this point. Under that statute, if in an action to foreclose the right to redeem, the court finds that the sale of the tax lien is valid and that the tax lien has not been redeemed, the court shall enter judgment "[f]oreclosing the right of *the defendant* to redeem." A.R.S. § 42–18204(A)(1)(emphasis added). The statute goes on to state that after judgment has been entered, *"the parties* whose rights to redeem the tax lien are thereby foreclosed have no further legal or equitable right, title or interest in the property subject to the right of appeal and stay of execution as in other civil actions." A.R.S. § 42–18204(B)(emphasis added). This statutory wording makes clear that only those parties who are joined in the action may have their rights to redeem foreclosed. The language of this statute is consistent with case law that generally recognizes that a person who is not a party to an action is not bound by the result. *Daystar Investments, L.L.C. v. Maricopa County Treasurer*, 207 Ariz. 569, 573, ¶ 15, 88 P.3d 1181, 1185 (App.2004). Therefore, the lienholders needed to join Roberts as a defendant in their foreclosure action and obtain a judgment against him to foreclose his right to redeem.

¶ 18 Requiring the holder of a tax lien certificate to join a decedent's heir will not, as the lienholders argue, impose an "impossible burden" on tax lien holders—that of attempting to locate a deceased property owner's heirs. First, this "burden" is an obligation that is fundamental to our system of laws. "[A]ny procedure which deprives an individual of a property interest must satisfy due process." *Mervyn's, Inc. v. Superior Court*, 144 Ariz. 297, 300, 697 P.2d 690, 693 (1985); *see also Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)(fundamental requisite of due process protected by Fourteenth Amendment is right to be heard; this right has "little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.").

¶ 19 Second, this obligation does not require the impossible. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 70 S.Ct. 652. A diligent search and inquiry for heirs is all that is required, similar to the type of diligence required to justify and effect service of process by publication. Thus, depending on the circumstances, a tax lien holder may need to examine public records or court records, or may need to ask relatives, friends, or neighbors of a decedent property owner about the existence of heirs. *Cf. Preston v. Denkins*, 94 Ariz. 214, 222–23, 382 P.2d 686, 691–92 (1963)(court lacked jurisdiction to enter default judgment following service by publication based on alleged lack of knowledge of defendants' residences when simple inquiry would have revealed information); *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 73, ¶ 15, 90 P.3d 1236, 1239 (App.2004)(service by publication satisfies due-process minimum notice requirements if "it is the best means of notice under the circumstances and it is reasonably calculated to apprise the interested parties of the pendency of the action."); *Cooper v. Commonwealth Title of Arizona*, 15 Ariz.App. 560, 564, 489 P.2d 1262, 1266 (1971)(lienholder's affidavit supporting service by publication failed to state facts showing diligent search

and inquiry had been made to ascertain residence or whereabouts of defendants; affidavit did not disclose whether telephone listings, county voting lists, county assessor's records, utility companies, neighbors, or city directory had been checked).

¶ 20 The very facts of this case undercut the lienholders' impossibility argument. The lienholders' lawyer spoke to John Roberts—another Johnson heir—and it would not have been burdensome to ask John Roberts whether there were other heirs. The record contains no evidence that this question was ever asked.

¶ 21 Further, when, as here, the tax lien certificate holder has reason to believe the property owner has died leaving heirs, and, after exercising appropriate due diligence, has been unable to locate those heirs, the unknown heirs can be made parties and served with process by publication. Arizona Rules of Civil Procedure 4.1(o) and 4.2(g)[9] specifically allow for such service. The language of the two rules is virtually identical. The principal difference between the two rules is that Rule 4.1(o) is a subsection of the rule that governs service of process in Arizona, while Rule 4.2(g) is a subsection of the rule that governs service of process outside of Arizona. Service by publication under either rule will satisfy both. *McAuliffe and Wahl*, 2 Ariz. Prac., Civil Trial Practice § 12.19 (2d ed.2001).

¶ 22 To justify service by publication under either Rule 4.1(o) or 4.2(g), the tax lien certificate holder will be required to explain to the court the circumstances warranting service by publication. This allows the tax lien certificate holder to explain to the court what efforts were made to identify and locate heirs and to satisfy the due-process requirements discussed above.

¶ 23 Whether service by publication is constitutionally sufficient will turn of the facts of the particular case. We do not attempt to set forth a rule that will fit each

circumstance. *See Mullane*, 339 U.S. at 317, 70 S.Ct. 652 ("This Court has not hesitated to approve of resort to publication ... where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights."); *see also Walker v. Dallas*, 146 Ariz. 440, 443–44, 706 P.2d 1207, 1210–11 (1985)(same).

¶ 24 In this case, the lienholders named Johnson's unknown heirs in the caption of their complaint, published the summons and the other information required by either rule once a week for four successive weeks in a Mohave County newspaper, and submitted an affidavit to the court referencing Rule 4.2(g). Yet, the lienholders advised the superior court they had not served Roberts by publication and affirmatively argued he had never been served "at all because he was not a party to the action." The lienholders took this position because they believed Roberts had no right, title, or interest in the real property. But, as we have explained, he did. Although on appeal—and contrary to their position in the superior court regarding service on Roberts—the lienholders suggest they properly served Roberts as an unknown heir by publication, the record contains no evidence of what steps, if any, the lienholders took to identify and locate Johnson's heirs before attempting service by publication. Therefore, we reverse the superior court's judgment denying Roberts' application for new trial and motion to set aside the foreclosure judgment and assessing Rule 11 sanctions. On remand, the court shall reconsider those motions consistent with this opinion.

¶ 25 Roberts has requested an award of attorneys' fees and costs. Roberts has not, however, identified any basis for an award of fees. We therefore deny his request for fees but grant his request for costs

9. Rule 4.2(g) states:
When in an action for the foreclosure of a mortgage on real property or in any action involving title to real property, it is necessary for a complete determination of the action that the unknown heirs of a deceased person be made parties, they may be sued as the unknown heirs of the decedent, and service of a summons may be made on them by publication in the county where the action is pending....

on appeal, contingent on his compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 26 The superior court's judgment denying Roberts' application for a new trial and motion to set aside the foreclosure judgment, and assessing Rule 11 sanctions, is reversed. We remand this matter to the superior court for further proceedings consistent with this opinion.

CONCURRING: DANIEL A. BARKER and JON W. THOMPSON, Judges.

