IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY −8 2013

COURT OF APPEALS
DIVISION TWO

WILLIAM DELO, an individual,⁣ )
⁣ )
⁣⁣ Plaintiff/Appellee, )
⁣ )
⁣⁣⁣ v. ) 2 CA-CV 2012-0085
⁣ ) 2 CA-CV 2012-0086
GMAC MORTGAGE, L.L.C., fka GMAC ) (Consolidated)
MORTGAGE CORPORATION, a Virginia ) DEPARTMENT B
corporation; U.S. BANK, N.A., as trustee )
for RAMP 2005EFC7, ) O P I N I O N
⁣ )
⁣⁣ Defendants/Appellants, )
⁣ )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., )
⁣ )
⁣⁣ Intervenor/Appellant. )
⁣ )

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV201004836

Honorable Bradley M. Soos, Judge Pro Tempore

REVERSED AND REMANDED

The Frutkin Law Firm, PLC
  By C. Adam Buck                                                                 Phoenix
                                                     Attorneys for Plaintiff/Appellee


Ryley Carlock & Applewhite
  By Kara A. Ricupero and Kevin R. Heaphy                                         Phoenix
                                                  Attorneys for Defendants/Appellants

Snell & Wilmer L.L.P.
  By Andrew M. Jacobs                                                    Tucson
                                                Attorneys for Intervenor/Appellant

---

V Á S Q U E Z, Presiding Judge.

**¶1**         In this quiet title action, GMAC Mortgage, L.L.C. and U.S. Bank, N.A. (the

GMAC Parties), and Mortgage Electronic Registration Systems, Inc. (MERS), appeal

from the trial court's grant of summary judgment quieting title in favor of appellee

William Delo to real property located in Queen Creek.[1]  The GMAC Parties and MERS

argue the court erred by concluding their interests in the property had been foreclosed in

a prior tax-lien foreclosure lawsuit.  For the reasons that follow, we reverse and remand

for entry of summary judgment in favor of the GMAC Parties.

### Factual Background and Procedural History

**¶2**         On appeal from the entry of summary judgment, we view the facts and all

reasonable inferences drawn from them in the light most favorable to the party opposing

---

[1]MERS, who was not a party to the quiet title action, filed a notice of appeal "as a non-party aggrieved by the judgment."  *See* Ariz. R. Civ. App. P. 1.  The same day, MERS also filed a motion to intervene with the trial court.  The trial court, however, denied the motion because jurisdiction had already vested with this court as a result of the GMAC Parties' filing a notice of appeal. *See Sw. Gas Corp. v. Irwin*, 229 Ariz. 198, ¶ 8, 273 P.3d 650, 653 (App. 2012) (filing notice of appeal generally divests trial court of jurisdiction).  In its unopposed motion to intervene subsequently filed with this court pursuant to Rule 24(a), Ariz. R. Civ. P., MERS argued that it had an interest in this case based on its unique business model and its contractual obligations with its member-lenders, like the GMAC Parties. *See Dowling v. Stapley*, 221 Ariz. 251, ¶ 58, 211 P.3d 1235, 1254 (App. 2009) (intervenor must have interest such that judgment would have direct legal effect upon rights).  We granted the motion to intervene and to consolidate the appeals.  As intervenor, MERS maintains that it seeks to protect the GMAC Parties' interests by requesting that the trial court's entry of summary judgment in favor of Delo be vacated and that summary judgment be entered in favor of the GMAC Parties.

the motion. *Robinson v. Kay*, 225 Ariz. 191, ¶ 2, 236 P.3d 418, 419 (App. 2010). Here, the underlying material facts are undisputed. In September 2005, Robert and Carri Anderson obtained a $200,000 loan from EquiFirst Corporation to purchase a residence in Queen Creek (the Property). The Andersons signed an Adjustable Rate Note (the Note) and executed a Deed of Trust on the property as security for the loan. The Deed of Trust designated EquiFirst as lender and MERS "as a nominee for Lender and Lender's successors and assigns," as "the beneficiary under the Security Instrument," and as legal title holder.

¶3 EquiFirst endorsed the Note "Without Recourse, Pay to the Order of," thereby transferring it to Wells Fargo in November 2005. EquiFirst also transferred the Note's servicing rights to Homecomings Financial, LLC, a subsidiary of GMAC. GMAC subsequently became the holder of the Note, placed it in a trust entitled "RAMP 2005EFC7," and appointed U.S. Bank as trustee.

¶4 In February 2007, the Pinal County Treasurer sold a tax lien on the Property for delinquent 2005 property taxes. Pinal County purchased the tax lien and assigned it to Delo when he paid the outstanding taxes. After the statutory three-year waiting period, *see* A.R.S. § 42-18201, Delo initiated foreclosure proceedings in June 2010, when the Andersons failed to redeem the tax lien. Delo named as defendants the Andersons, EquiFirst, and the San Tan Heights Homeowners Association, all of whom had been identified in a Limited Search Report prepared by Security Title Agency as having interests in the Property. Delo did not name the GMAC Parties or MERS as

3

defendants in the lawsuit. He did, however, record a lis pendens indicating the foreclosure complaint had been filed.

¶5 After the defendants failed to respond to Delo's foreclosure complaint, the trial court entered a default judgment on September 15, 2010. Delo obtained a Treasurer's Deed to the Property on October 7, 2010. In the meantime, after the Andersons had defaulted on the Note, MERS instructed Executive Trustee Services, LLC (ETS) to institute non-judicial foreclosure proceedings on the Property.[2] In May 2010, ETS recorded a Notice of Trustee's Sale of the Property, setting August 31, 2010, as the date of the sale. GMAC, represented by U.S. Bank, was the highest and only bidder at the trustee's sale. ETS executed a deed in favor of U.S. Bank, as Trustee for RAMP 2005EFC7 (Trustee's Deed), and recorded it on September 10, 2010.

¶6 In December 2010, Delo filed this lawsuit against the GMAC Parties, seeking to quiet title to the Property. The parties filed cross-motions for summary judgment. After hearing oral argument, the trial court granted Delo's motion and entered judgment in his favor. The GMAC Parties and MERS filed separate notices of appeal, which we have consolidated. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

¶7 The GMAC Parties contend the trial court erred by granting Delo's motion for summary judgment because the court "failed to adhere to Arizona law requiring that

---

[2]In December 2008, MERS executed a Substitution of Trustee naming ETS as trustee. That document was recorded December 5, 2008.

Delo name parties in a tax lien foreclosure lawsuit as a prerequisite of due process to foreclose their interest in the subject property." MERS similarly contends the court's judgment quieting title in Delo is void and "should be reversed because it fails to recognize MERS's prior record interest in the property." We review the court's summary judgment ruling de novo, "determin[ing] independently whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, ¶ 14, 129 P.3d 966, 971 (App. 2006).

¶8        Pursuant to A.R.S. § 42-17153(A), "a tax that is levied on real or personal property is a lien on the assessed property." To secure the payment of the unpaid taxes, the county treasurer is authorized "to sell the tax liens . . . and to foreclose the right to redeem," A.R.S. § 42-18101(A), delivering to each purchaser or assignee a certificate of purchase, A.R.S. § 42-18118(A). A real property tax lien may be redeemed by a property owner; the owner's agent, assignee, or attorney; or "[a]ny person who has a legal or equitable claim in the property." A.R.S. § 42-18151(A). If the lien is not redeemed within three years, the purchaser may bring an action to foreclose the right to redeem. A.R.S. § 42-18201.

¶9        In his motion for summary judgment, Delo first argued he "ha[d] priority over [the GMAC Parties] by virtue of the lis pendens he recorded." Second, he maintained the GMAC Parties did not have legal authority to foreclose because there is no public record that EquiFirst ever assigned the Note to them. Finally, Delo argued "MERS [wa]s not a necessary party in [the] foreclosure action" because MERS is merely

5

an agent for the lender. In their response and cross-motion, the GMAC Parties argued that, as the holder of the Note, GMAC was entitled to enforce it. They asserted that the lack of a recorded assignment of the Note had "no bearing" on this case, because MERS, as GMAC's agent, "held a valid legal interest in the Property well before initiation of the [tax-lien foreclosure l]awsuit and validly commenced a [non-judicial] foreclosure action *prior* to filing of the same." And, they argued Delo's "lis pendens provide[d] no authority to foreclose" the interests of the GMAC Parties or MERS because their interests all had vested prior to the lis pendens and Delo failed to name them in the tax-lien foreclosure lawsuit.

¶10        The trial court agreed with Delo, concluding that because Delo had filed a lis pendens on August 12, 2010, before any recorded interest of the GMAC Parties,[3] the GMAC Parties had received sufficient notice and an opportunity to intervene in Delo's tax-lien foreclosure action. The court concluded that having failed to intervene, the GMAC Parties "cannot now claim that their interests are prior in right to [Delo]'s interests."

---

[3]The trial court acknowledged that "GMAC purportedly became the holder of the [N]ote" pursuant to an endorsement on an instrument attached to the Deed of Trust. However, the court found "the time of the endorsement is unknown, it was not initially recorded, and there is no evidence to suggest it was done so prior to [Delo] filing and recording a Notice of Lis Pendens." But we are aware of no requirement that the endorsement be recorded to be valid. *See In re Vasquez*, 228 Ariz. 357, ¶ 3, 266 P.3d 1053, 1055 (2011) (recording assignment of deed of trust not required prior to filing notice of trustee's sale). And, although Delo challenges the timing of the endorsement to GMAC, this does not constitute a material issue of fact precluding summary judgment in favor of the GMAC Parties. It is undisputed that Delo failed to provide notice of the tax-lien foreclosure lawsuit to MERS, whose interests were identified in the Deed of Trust, and MERS's interests protected the interests of the GMAC Parties.

6

**¶11** In reaching this conclusion, the trial court relied primarily on *Ticktin v. Western Savings & Loan Ass'n*, 8 Ariz. App. 63, 442 P.2d 886 (1968). In that case, this court was asked to decide "whether the assignees of a realty mortgage may prevail against a party who ha[d] previously foreclosed a prior realty mortgage on the same property after having duly recorded a notice of lis pendens." *Ticktin*, 8 Ariz. App. at 64, 442 P.2d at 887. In ruling that the assignees of the second mortgage could not prevail, we noted that the second mortgage had been executed and assigned after the first mortgage foreclosure action had been filed and lis pendens recorded. *Id.* at 64-65, 442 P.2d at 887-88. Thus, because the lis pendens was recorded before the second mortgage came into existence and was assigned, the assignee lost whatever rights to the property he may have had by failing to intervene in the prior foreclosure action. *Id.* We explained:

> [T]he doctrine of lis pendens does not apply to persons who acquire their interest in the subject land of the suit [p]rior to the commencement of the action and recording of lis pendens. [Rather], it has been held that the lis pendens statute is prospective in its action and is notice to those who thereafter acquire an interest in the real property after the filing of lis pendens.

*Id.* at 65, 442 P.2d at 888.

**¶12** Here, the Deed of Trust designating MERS as nominee for the lender and its successors and assigns, beneficiary, and legal title holder, was recorded September 21, 2005. The Substitution of Trustee appointing ETS as trustee under the Deed of Trust was recorded December 5, 2008. Clearly, MERS's and ETS's interests in the Property were acquired long before Delo had acquired his interest. Moreover, ETS recorded the Notice of Trustee's Sale on May 27, 2010, setting a date for the sale of the Property on

7

August 31. Delo did not file the tax-lien foreclosure lawsuit until June 10, 2010, and did not record the lis pendens until August 12. Accordingly, the trial court's reliance on *Ticktin* is misplaced. "[I]f the holder of a tax-lien certificate wants to foreclose the redemption right of an owner or a person who has a legal or equitable interest in the property, the holder must join those parties in the foreclosure action." *Roberts v. Robert*, 215 Ariz. 176, ¶ 16, 158 P.3d 899, 903 (App. 2007). Although the Limited Title Search obtained by Delo had attached to it the Deed of Trust showing MERS's interests in the Property, Delo failed to join MERS as a party in the lawsuit. And, because MERS was designated the lender's nominee under the Deed of Trust, the GMAC Parties' interests in the Property were protected by MERS's recorded interests. "Equity favors the right to redeem and will not deny the right except upon strict compliance with the steps necessary to divest it." *Harbel Oil Co. v. Steele*, 83 Ariz. 181, 185, 318 P.2d 359, 362 (1957).

¶13    We find *Roberts* to be instructive. There, two real property tax lien holders brought a lawsuit against the property owner of record, the Mohave County Treasurer, various fictitious parties, and the "unknown heirs of any of" them, seeking to foreclose their right to redeem the tax lien. *Roberts*, 215 Ariz. 176, ¶ 1, 158 P.3d at 900. The tax lien holders then discovered the property owner was deceased and negotiated a deal with the decedent's son, the "person in charge of the defendant's estate," whereby the lien holders would obtain a default judgment but would not pursue fees or costs against the son or the decedent's estate. *Id.* Pursuant to the agreement, the lien holders obtained a default judgment purporting to bar the decedent "or any person claiming title 'under' her" from asserting any rights in the property. *Id.* A year later, however, a second son of the

8

decedent appeared and claimed the default judgment "was void insofar as it purported to foreclose his right to redeem." *Id.* ¶ 2. The trial court disagreed and denied relief. *Id.*

**¶14** On appeal, we reversed the trial court's judgment, holding that the second son held a legal right to redeem the tax lien on his deceased mother's real property. *Id.* ¶ 3. We reasoned that, as an heir, the second son was entitled to redeem by reason of his ownership interest in the property, which he had acquired "by operation of law" after his mother's death. *Id.* ¶ 14. And "because the lienholders failed to join him as a defendant in their foreclosure action, the foreclosure judgment did not foreclose his right to redeem." *Id.* ¶ 15; *see also* A.R.S. § 42-18204(A)(1) (if prerequisites met, trial court "shall enter judgment . . . [f]oreclosing the right of the defendant to redeem"). We noted that our result was consistent with the legal principle that a person who is not a party to a lawsuit generally is not bound by the result. *Roberts*, 215 Ariz. 176, ¶ 17, 158 P.3d at 903.

**¶15** The trial court here distinguished *Roberts* on the basis that the heir in *Roberts* had obtained his interest "by operation of law" rather than by an assignment. The court also reasoned that the lien holders in *Roberts* "were in contact with another family heir throughout the litigation and . . . it would not have been burdensome to the lienholders to inquire about other heirs." We are not persuaded by these distinctions, however, because, as we have noted, MERS was identified in the recorded Deed of Trust, which Delo should have examined in ascertaining what parties had a legal or equitable interest in the Property. And through MERS, Delo could have identified the GMAC Parties' interests. *See Roberts*, 215 Ariz. 176, ¶ 19, 158 P.3d at 903.

9

¶16 As its name suggests, MERS is an electronic registration system that does not originate, lend, service, or invest in home loans. *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009). "Instead, MERS acts as the nominal mortgagee for the loans owned by its member-lenders." *Id.* In *Cervantes v. Countrywide Home Loans, Inc.*, the Ninth Circuit Court of Appeals explained that MERS was created in response to the mortgage industry's perception that the traditional recording process had become cumbersome as the trading of loans increased. 656 F.3d 1034, 1039 (9th Cir. 2011). "MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." *Id.* The court explained further:

> If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

*Id.* Because MERS is the sole record keeper for transactions between its members, those who purchase tax liens and seek to foreclose on them must give MERS notice of the foreclosure proceedings when they are identified in the deed of trust. *See Roberts*, 215 Ariz. 176, ¶ 16, 158 P.3d at 903.

¶17 Delo nevertheless maintains he was not required to name MERS as a defendant in the tax-lien foreclosure action "because MERS was the agent of EquiFirst and EquiFirst was named and served directly." But due process requires a tax lien holder

10

to engage in a "diligent search and inquiry" for persons or entities holding a legal or equitable interest in property before those interests can be foreclosed by default. *Roberts*, 215 Ariz. 176, ¶ 19, 158 P.3d at 903. As we noted above, the Deed of Trust not only expressly identifies MERS as the nominee for the lender, but also as beneficiary, and the holder of legal title to the Property. And, even if MERS was merely an agent of EquiFirst and its successors, a diligent search for the true holder of the Note, for purposes of giving proper notice of the tax-lien foreclosure lawsuit, would have included providing notice of the lawsuit to MERS, who then could have forwarded it to the current holder of the Note. *See Citimortgage Inc. v. Barabas*, 975 N.E.2d 805, 814 (Ind. 2012) (MERS member banks appoint MERS as their agent for purposes of service of process in any foreclosure action). Delo's recording of the lis pendens was a "'mere gesture'" that did not satisfy due process notice requirements. *Roberts*, 215 Ariz. 176, ¶ 19, 158 P.3d at 903, *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). And, the trial court erred by placing the burden on the GMAC Parties to intervene in Delo's tax-lien foreclosure lawsuit, rather than on Delo to ascertain those with a legal or equitable interest in the Property.

**¶18** We also reject Delo's argument that the unrecorded interests of the GMAC Parties were invalid as to him because he was a bona fide purchaser. A bona fide purchaser is one who purchases property for value and without actual or constructive notice of a prior unrecorded interest. *See First Am. Title Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, ¶ 12, 187 P.3d 1107, 1111 (2008); *Davis v. Kleindienst*, 64 Ariz. 251, 258, 169 P.2d 78, 82 (1946). A purchaser is on constructive notice of recorded documents and

11

"'of the facts a reasonably diligent inquiry would disclose.'" *Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 500, 943 P.2d 855, 860 (App. 1997), *quoting Maricopa Utils. Co. v. Cline*, 60 Ariz. 209, 214, 134 P.2d 156, 158 (1943). "Constructive notice and actual notice have the same effect and when the purchaser of land has notice of a prior claim to the land, he takes it subject to that claim." *Warren v. Whitehall Income Fund 86*, 170 Ariz. 241, 243, 823 P.2d 689, 691 (App. 1991). As we explained above, a reasonably diligent inquiry would have put Delo on notice of MERS's interests and, through MERS, that of the GMAC Parties. *See Hall*, 189 Ariz. at 500, 943 P.2d at 860. Indeed, the Limited Search Report obtained by Delo had attached to it the Deed of Trust naming MERS nominee, beneficiary, and legal title holder of the Property. Delo therefore was not a bona fide purchaser with priority over the unrecorded interests of the GMAC Parties.[4]

**Disposition**

¶19        For the reasons set forth above, we reverse the trial court's summary judgment in favor of Delo and remand with instructions to enter summary judgment in favor of the GMAC Parties. *See PNL Asset Mgmt. Co. v. Brendgen & Taylor P'ship*, 193

---

[4]In light of our conclusion, we need not address the GMAC Parties' argument that "the trial court erred in failing to hold that [they] were equitably subrogated to MERS'[s] interest."

12

Ariz. 126, ¶ 10, 970 P.2d 958, 961 (App. 1998) (where cross-motions for summary judgment filed, this court may remand with instructions that judgment be entered in favor of appellant).

/s/ _Garye L. Vásquez_
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ _Virginia C. Kelly_
VIRGINIA C. KELLY, Judge

/s/ _Philip G. Espinosa_
PHILIP G. ESPINOSA, Judge